IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE ANGEL MORENO, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-418 |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**Memorandum and Order**

The State of Texas plans to execute Jose Angel Moreno ("Moreno") on May 10, 2007. Moreno has filed a civil rights action pursuant to 42 U.S.C. § 1983 challenging Texas' lethal injection procedure. (Docket Entry No. 13). Moreno seeks a permanent injunction to prevent Texas from effectuating his execution by the protocol currently in use. This Court ordered Moreno to show good cause why his complaint should not be dismissed as dilatory. (Docket Entry No. 14). The parties have both submitted a reply. (Docket Entry Nos. 15, 16). The Court dismisses Moreno's civil action with prejudice for the reasons that follow.

**Background**

Other courts have extensively reviewed the factual background to Moreno's conviction and death sentence. *See Moreno v. Quarterman*, 450 F.3d 158 (5th Cir. 2006); *Moreno v. Dretke*, 362 F. Supp.2d 773, 779-785 (W.D. Tex. 2005). It is sufficient to note that on January 21, 1986, Moreno kidnapped John Cruz believing that he belonged to a wealthy family who would pay a ransom for his return. That same day, Moreno shot Mr.

Cruz in the head. After burying Mr. Cruz's body, Moreno sought ransom money from his family. The police eventually arrested Moreno and he confessed to the murder.

A jury convicted Moreno of capital murder. On January 13, 1987, the jury answered Texas' special issue questions in a manner resulting in Moreno's death sentence. The Texas Court of Criminal Appeals affirmed his conviction and sentence. *Moreno v. State*, 858 S.W.2d 453 (Tex. Crim. App. 1993). Moreno's conviction became final when the Supreme Court denied certiorari review on November 8, 1993. *Moreno v. Texas*, 510 U.S. 966 (1993). After unsuccessfully seeking state habeas relief, Moreno filed a federal petition for a writ of habeas corpus. The district court denied relief and the Fifth Circuit issued an opinion on May 18, 2006, refusing to grant a Certificate of Appealability. *Moreno v. Quarterman*, 450 F.3d 158 (5th Cir. 2006). On December 7, 2006, Moreno initiated the instant lawsuit challenging Texas' lethal injection procedure. The Supreme Court denied certiorari review on January 8, 2007. *Moreno v. Quarterman*, ___ U.S. ___, 127 S. Ct. 935 (2007). Texas set an execution date soon afterwards.

## Discussion

This is not the first case alleging that Texas' lethal injection cocktail violates the Eighth Amendment's prohibition on cruel and unusual punishment. After the Supreme Court's decision in *Nelson v. Campbell*, 541 U.S. 637 (2004), which held that an inmate could file a civil rights action pursuant to 42 U.S.C. § 1983 to oppose the rarely used "cut down" method of lethal injection, inmates throughout the country began filing section 1983

actions challenging different aspects of the lethal injection procedure – often on the eve of their execution – to varying results.[1]

Without addressing whether such actions belong in habeas or civil rights law, the Fifth Circuit initially refused to consider all lethal injection challenges after *Nelson*, instead holding that capital inmates risk dismissal if they unnecessarily delay in bringing such lawsuits. *See Smith v. Johnson*, 440 F.3d 262, 263 (5th Cir. 2006); *Neville v. Johnson*, 440 F.3d 221, 222 (5th Cir. 2006); *White v. Johnson*, 429 F.3d 572, 574 (5th Cir. 2005); *Harris v. Johnson*, 376 F.3d 414, 416 (5th Cir. 2004). The Fifth Circuit uniformly refused to stay any execution when the inmate filed his lethal injection claim after Texas set an execution date, finding that such challenges "seek a delay of [an inmate's] execution, not merely to effect an alteration of the manner in which it is carried out." *Harris*, 376 F.3d at 418.

In *Hill v. McDonough*, ___ U.S. ___, 126 S. Ct. 2096 (2006), the Supreme Court recently decided that method-of-execution cases generally sound in civil rights jurisprudence. The *Hill* decision confirms that an action under 42 U.S.C. § 1983 is the appropriate legal

---

[1] *Nelson* also held that inmates "must exhaust available remedies before bringing a § 1983 action challenging the conditions of their confinement." 541 U.S. at 650. The Supreme Court has recently reemphasized that a civil rights plaintiff "must now exhaust all 'available' remedies[.]" *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 2382 (2006); *see also* 42 U.S.C. § 1997(e). Texas Department of Criminal Justice ("TDCJ") administrative regulations establish a two-step grievance policy. A plaintiff must exhaust both steps to exhaust his federal claim. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Moreno's amended complaint states that he "submitted to the TDCJ a grievance form protesting the suspected proposed execution methods and procedures and the secrecy surrounding them. Subsequently, Defendants finally resolved Mr. Moreno's grievance, declining to take any action." (Docket Entry No. 13 at 5). On the limited record before the Court it is not clear that Moreno completed both steps of TDCJ's grievance procedure.

framework for Moreno's current lawsuit. *Hill*, however, does not require this Court to stay Moreno's impending execution automatically. The *Hill* decision cautioned that "[t]he federal courts can and should protect States from dilatory or speculative suits . . . ." *Hill*, ___ U.S. at ___, 126 S. Ct. at 2104. The Supreme Court noted that "a stay of execution is an equitable remedy . . . and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id*; *see also Gomez v. United States Dist. Court for Northern Dist. of Cal.*, 503 U.S. 653, 654 (1992) ("Equity must take into consideration the State's strong interest in proceeding with its judgment[.]"). The *Hill* court approvingly cited the Fifth Circuit's dismissal of tardy lethal injection challenges and reemphasized that "[a] court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time to allow consideration of the merits without requiring entry of a stay.'" *Id.* (quoting *Nelson*, 541 U.S. at 650); *see also Brown v. Livingston*, 457 F.3d 390, 391 (5th Cir. 2006) (reaffirming the Fifth Circuit's approach after *Hill*); *Resendiz v. Livingston*, 454 F.3d 455 (5th Cir. 2006) (same); *Reese v. Livingston*, 453 F.3d 289, 290 (5th Cir. 2006) (noting the *Hill* court's approbation of Fifth Circuit precedent).[2]

With the time constraints imposed by the impending execution, this lawsuit can only

---

[2] The Fifth Circuit has consistently reached similar conclusions in unpublished decisions. *See Pippin v. Quarterman*, 2007 WL 1011639 (5th Cir. Mar. 28, 2007); *Summers v. Tex. Dept. of Criminal Justice*, 206 Fed. App'x 317, 319-20 (5th Cir. 2006); *Wilson v. Livingston*, 179 Fed. App'x 228, 229 (5th Cir. 2006); *Kincy v. Livingston*, 173 Fed. App'x 341, 342-42 (5th Cir. 2006); *Hughes v. Livingston*, 170 Fed. App'x 878, 880 (5th Cir. 2006); *Elizalde v. Livingston*, No. 06-70002 (5th Cir. Jan. 30, 2006).

proceed through the operation of equity. *Hill* and *Nelson* emphasized that, to merit equity, an inmate must not unnecessarily delay in advancing his method-of-execution challenge. *See Hill*, ___ U.S. at ___, 126 S. Ct. 2104; *Nelson*, 541 U.S. at 249-50. Fifth Circuit law focuses on two distinct time periods that impact the question of delay. First, the Fifth Circuit considers the time between the finality of an inmate's conviction and the filing of his complaint. The Fifth Circuit has uniformly held that method-of-execution challenges become ripe when an inmate's conviction becomes final on direct appeal. *See Brown*, 457 F.3d at 391; *Reese*, 453 F.3d at 290-91; *Smith*, 440 F.3d at 263; *Neville*, 440 F.3d at 222; *White*, 429 F.3d at 574. Second, the Fifth Circuit looks at the time between the filing of the complaint and any set execution date, holding that an inmate must provide a sufficient opportunity to litigate the action without undue federal intrusion into state process. *See Brown*, 457 F.3d at 391; *Resendiz*, 454 F.3d at 455; *Reese*, 453 F.3d at 291; *Smith*, 440 F.3d at 263; *Neville*, 440 F.3d at 223; *White*, 429 F.3d at 574; *Harris*, 376 F.3d at 417-19. The Court must consider both distinct periods in determining whether equity requires a stay of Moreno's execution.

Noting the forgoing Supreme Court and Fifth Circuit precedent, the Court issued a show cause order highlighting two possible grounds for dismissal. First, notwithstanding the fact that Moreno's capital conviction became final in 1993, he waited until the State of Texas would assuredly set an execution date before challenging its lethal injection procedure. Second, even after Moreno filed this case he let his action languish until his execution became imminent. Moreno's response to the show cause order only addresses the first

5

concern. The Court finds that both grounds justify dismissing Moreno's complaint.

First, Moreno did not file this lawsuit diligently. Moreno filed his complaint well over a decade after his conviction became final on direct appeal. Moreno raises several arguments to justify waiting to file his complaint, all of which are common to inmates who filed similar actions before him. Taken together, Moreno argues that, as an indigent inmate without the guarantee of appointed counsel to represent his interests in a civil action, he could not engage in factual investigation that would allow proper development of his claim. Moreno also identifies several dates that he alleges his claim first became available – the *Nelson* opinion in 2004;[3] the concrete resolution of when lethal injection claims become ripe in 2005;[4] an influential article from a medical journal in 2005; and factual development from another case in March 2006. The *Harris* case in 2004, however, raised essentially the same allegations that are now before the Court. *Harris* put inmates on notice that the Fifth Circuit would not countenance any delay in advancing such claims. *See Harris*, 376 F.3d at 419. Other than to emphasize his indigence and lack of appointed counsel, Moreno has not shown why he could not have filed much earlier.

---

[3] Moreno contends that since the Fifth Circuit law in *Martinez v. Tex. Ct. Crim. Appeals*, 292 F.3d 417, 421 (5th Cir. 2002), required inmates to advance such claims in habeas petitions, he could not bring this claim until *Nelson* opened the door to civil rights challenges. The Fifth Circuit in *Harris* rejected that justification for dilatory filing. *See Harris*, 376 F.3d at 418-19.

[4] While *White* specified that method-of-execution challenges become ripe when the inmate's conviction became final, *see White*, 429 F.3d at 574, no case has forgiven an inmate's failure to file before then, especially since *Harris* amply warned inmates to file before an execution became imminent.

6

Moreno does not account for the fact that, while still indigent and without appointed counsel, he nevertheless proceeds with this lawsuit. He does not show what changed in December 2006 that enabled him to file his complaint other than that "it became apparent that his legal efforts to avoid execution would almost certainly not prevail." (Docket Entry No. 15 at 5). The time to file such lawsuits is during the pendency of his state and federal habeas litigation, not when the execution becomes inevitable *See Harris*, 376 F.3d at 418. Throughout his extensive legal proceedings Moreno has known that he would die by lethal injection, "yet has chosen only this moment, with his execution imminent, to challenge a procedure for lethal injection that the state has used for an even longer period of time." *Harris*, 376 F.3d at 417; *see also Brown*, 457 F.3d at 391 (faulting an inmate for "wait[ing] to challenge a procedure for lethal injection that has been used by the State during his entire stay on death row"). "It was during that period – in which the execution was not so much an imminent or impending danger as it was an event reasonably likely to occur in the future – that he needed to file this challenge." *Harris*, 376 F.3d at 418.

Moreno seeks to distinguish his case from the relevant jurisprudence because all previous Fifth Circuit cases to this point have involved an inmate who filed his section 1983 complaint after the State set an execution date.[5] The Fifth Circuit has not computed the amount of time an inmate must file before his execution date. While previous cases have

---

[5] Moreno points to cases in this district and throughout the nation which have allowed civil rights actions to proceed when filed before the setting of an execution date. At least one circuit court, however, has allowed an execution to proceed when the State set the execution date *after* the inmate filed his complaint. *See Patton v. Jones*, 193 Fed. App'x 785 (10th Cir.), *cert. denied*, ___ U.S. ___, 127 S. Ct. 28 (2006).

7

emphasized that the filing of a lethal injection case after the setting of an execution date reveals a motive to enjoin an *execution*, not an *execution method*, the external act of setting an execution date is not dispositive in determining whether an inmate has delayed in bringing his case. Focusing on the setting of an execution date is one sure method of determining whether or not an inmate proceeds in a manner that would "afford[] opportunity for developing facts . . . and allow a principled decision of the merits[.]" *Reese*, 453 F.3d at 291. Here, however, although Texas had not yet set an execution date when Moreno filed his complaint, he should have known that little time remained to litigate his claim.

It is not uncommon for the State of Texas to set an execution date while a petition for certiorari from federal habeas review remains pending. *See generally Summers v. Tex. Dept. of Criminal Justice*, 206 Fed. App'x 317, 318 (5th Cir. 2006) (showing that Texas set the execution date during the pendency of a certiorari petition). The Supreme Court often denies certiorari review from federal habeas cases only hours before an execution takes place. *See generally Anderson v. Quarterman*, ___ U.S. ___, 127 S. Ct. 1368 (2007) (denying certiorari review on the day of execution); *Shannon v. Quarterman*, ___ U.S. ___, 127 S. Ct. 577 (2006) (same); *Jackson v. Quarterman*, ___ U.S. ___, 127 S. Ct. 550 (2006) (same). Texas was likely to set an execution date soon after the Fifth Circuit refused to grant a Certificate of Appealability on May 18, 2006. Moreno waited until December 2006 to file his complaint. Waiting until the sunset of federal habeas review, when the setting of an execution date looms on the horizon, exhibits a lack of diligence. Full development of the claims Moreno raises would take a significant amount of time and require extensive factual

8

development. An inmate with his federal review nearly concluded should anticipate that the course of lethal injection litigation would exceed the time remaining before the State seeks to effectuate his sentence. While the setting of an execution date put Moreno's complaint in a more urgent light, he should have foreseen the imminence of his execution well before that date.

Second, Moreno has not litigated this case with diligence. Although it is true that Moreno initiated this lawsuit shortly before the State set his execution date, failure to pursue his case actively once an execution date was set constitutes lethargy that does not warrant an exercise of equity. Moreno filed a motion for the appointment of counsel and a motion to proceed *in forma pauperis* in the United States District Court for the Western District of Texas on December 7, 2006. (Docket Entry No. 1). On December 18, 2006, the Western District denied both motions. (Docket Entry No. 4). On January 8, 2007, the Supreme Court denied certiorari review from Moreno's federal habeas petition. *Moreno v. Quarterman*, ___ U.S. ___, 127 S. Ct. 935 (2007). Moreno renewed his IFP motion on January 9, 2007. (Docket Entry No. 5). The Western District transferred this case on January 29, 2007. (Docket Entry No. 6). On February 6, 2007, the Court granted Moreno permission to proceed IFP, but advised him that the docket did not show that he had filed a complaint. (Docket Entry No. 10). On February 15, 2007, the defendants informed the Court that Texas had set an execution date. (Docket Entry No. 11).

Moreno waited to file a copy of his initial complaint and his amended complaint until April 4, 2007, with only slightly over a month left before his execution. Before that date this

Court had no pleading on record that would divulge the nature of the anticipated claims or the relief sought. With no complaint appearing on the docket, the Court had no basis to stay any execution date. While he filed a complaint in another district before his execution date was set, Moreno has not actively prosecuted his lethal injection challenge until now. Moreno has provided no excuse for his lack of diligence in this area.[6] Moreno simply waited too long before filing and litigating this lawsuit.

---

[6] Moreno extensively argues that this Court should stay his execution because another lawsuit is proceeding in which a plaintiff filed in a similar situation as he did. In *Raby v. Livingston*, No. 05-cv-765 (S.D. Tex.), the inmate filed his complaint after the conclusion of federal review, but before an execution date was set. While Moreno is correct that the timing of the two cases is similar, this Court's review of Moreno's filing must take into account a factor never considered in *Raby* – the extraordinary application of equity. The Court has never issued a stay of execution in the *Raby* case and at this point in time the concerns factoring into the balance of equity differ significantly.

**Conclusion**

Moreno filed a tardy complaint and then showed no diligence in prosecuting this action. The Court assumes that Texas will not engage in the unsettling practice of using execution dates as a defensive tactic in the normal course of litigation brought by death row inmates. Here, however, the State has a sound interest in executing Moreno's otherwise-valid judgments without postponement by belated litigation. The circumstances before this Court do not present a compelling case for the exceptional exercise of equity in Moreno's behalf. Accordingly, this Court **DISMISSES** his complaint **WITH PREJUDICE**.

Signed at Houston, Texas on April 24, 2007.

_____
Gray H. Miller
United States District Judge